## SUPREME COURT.

### THE PEOPLE *ex rel*. FRANK R. SHERWIN agt. MICHAEL L. MEAD.

*Oyer and terminer — Jurisdiction to try indictment found by court of sessions — Bench warrant — Justice of supreme court — No power to let one arrested on bench warrant to bail while a court is in session having jurisdiction to try the indictment — Practice as to bench warrants, before and since the Code of Criminal Procedure — Code of Criminal Procedure, sections 301, 302.*

The court of oyer and terminer has jurisdiction to try an indictment found in the court of sessions of the county without any order of the sessions sending the indictment to the oyer for trial.

On an indictment found before the Code of Criminal Procedure took effect, a justice of the supreme court has no power to let one arrested on a bench warrant to bail while a court is in session having jurisdiction to try the indictment.

The statute, prior to such Code, authorizing a district-attorney to issue a

The People *ex rel.* Sherwin agt. Mead.

bench warrant for the arrest of one indicted, makes no requirements as to the form of the warrant or the matters which shall be stated therein.

The sufficiency thereof must be determined by the common-law rule on the subject.

It is sufficient if the bench warrant clearly indicate the nature of the offense for which the accused stands indicted, and the place and the court in which the indictment is pending.

Sections 301 and 302 of the Code of Criminal Procedure do not, by section 962, apply to indictments found before such Code took effect.

Sections 301 and 302 only apply to the form of a bench warrant to be issued by the clerk, on the application of the district-attorney, in cases where the prisoner has been let to bail, or has deposited money instead thereof, and has failed to appear in pursuance of his recognizance.

When the district-attorney himself issues the bench warrant, he is not required to follow the form provided in section 301.

Where one is served in the city of New York with a subpœna issued by a court in Albany county, and fails to obey it, he is guilty of a criminal contempt, for which he may be indicted in Albany county.

Personal presence at the place where the crime is perpetrated is not indispensable to constitute an offense.

Failure to attend the court in Albany county impeded and delayed the administration of justice at that place, and the law presumes the accused intended that his behavior should have that effect.

If the return show a valid and sufficient authority for continuing the custody and arrest of the prisoner, it is no ground for reversing an order dismissing a *habeas corpus* that the officer making the return had also arrested the prisoner on other similar warrants.

On *habeas corpus* the officer issuing the writ may inquire whether there was any such indictment as is stated in the bench warrant, and whether the court in which it was found had jurisdiction of the subject-matter.

The question as to the guilt of the prisoner cannot be inquired into on *habeas corpus.*

Where one who has disobeyed a subpœna is proceeded against by indictment for a criminal contempt, the rules and tests applicable to a civil proceeding to punish such disobedience do not apply.

Civil and criminal proceedings are entirely independent of each other. They may be prosecuted at the same time; and a conviction under one is no bar to a prosecution under the other.

*First Department, General Term, May,* 1882.

*Before* BRADY, DANIELS *and* BARKER, *JJ.*

ON the 4th day of February, 1882, the relator was in the custody of the respondent, Michael L. Mead, in the city of New York, by virtue of a bench warrant, issued by the district-attorney of the county of Albany, dated the 3d day of February, 1882, wherein he was commanded to take into custody the relator. The following is the part stating the offense : " Who stands indicted by the court of sessions of the county of Albany for contempt, and bring him before said court, at the City Hall, in the city of Albany, in said county, if the said court shall then be in session, together with this warrant ; but if the said court be not in session, you are hereby commanded to deliver him, together with this warrant, to the keeper of the Albany county jail," etc.

On the said fourth day of February, Justice DONOHUE, on the petition of the relator, issued a writ of *habeas corpus*, commanding the person having the custody of the relator to bring him before the justice, that he might be discharged, the petitioner claiming that he was illegally arrested and detained, and if it should appear that he was lawfully in custody that he might be let to bail. An immediate return was made by Mead, wherein he stated that he had arrested the prisoner, and held him pursuant to the said warrant, a copy of which was annexed, and by no other process. Without further proceedings being had that day, they were adjourned until the eighth day of February.

The hearing proceeded from day to day until the first day of March, when said justice dismissed the proceeding and remanded the relator to the custody of the said Michael Mead. It was made to appear to the said justice that the court of oyer and terminer, in and for the county of Albany, commenced a term of its court on the sixth of February, and was in session during the pendency of the proceedings. The relator, pending the proceedings, presented to the court a paper purporting to be a copy of the indictment, found in the Albany sessions, upon which the bench warrant was issued, which appears to have been received by the court, and

acted upon by the counsel for the relator and the district-attorney as a true copy of the indictment pending against the prisoner. The indictment charged in substance that the prisoner had been duly and lawfully subpœnaed to attend a term of the court of oyer and terminer in and for the county of Albany, at the City Hall, in the city of Albany, on the 18th day of May, 1874, at three o'clock in the afternoon of that day, then and there to testify and give evidence on behalf of the people concerning a certain indictment then to be tried in said court, against Charles H. Phelps, for grand larceny; that said writ of subpœna was, on the 1st day of May, 1874, at the city of New York, state of New York, exhibited to the said prisoner, and duly served upon him; and that the prisoner, with an attempt to impede and obstruct the due course of justice, unlawfully and will-fully disobeyed the writ of subpœna, and did not appear before the court of oyer and terminer at the time and place specified in the writ of subpœna, to testify as by said precept he was commanded, to the great hindrance and delay of pub-lic justice and in contempt of said court. It was ruled on the hearing that the prisoner was lawfully arrested and detained, by virtue of the precept in the hands of Mead, and that the prisoner was not entitled to be let to bail, for the reason that the court of oyer and terminer, in and for the county of Albany, was then in session, having jurisdiction to try the indictment. It was conceded by the district-attorney that no order had been made by the court of sessions, trans-ferring the indictment to the court of oyer and terminer for trial. From the order dismissing the *habeas corpus* proceed-ings, and remanding the prisoner to the custody of Mead, the relator appealed to this court.

*H. E. Tremaine*, for relator.

*N. C. Moak*, for people.

BARKER, *J.* — The court of oyer and terminer, in and for the county of Albany, had jurisdiction to try the relator upon this indictment without any order from the court of sessions, in which the indictment was found, sending the same to the oyer and terminer for trial (3 *Revised Statutes*, 205, *secs.* 29 *and* 30; 2 *Ed. Stat.*, 214; *The People* agt. *Myers*, 2 *Hun*, 626; *The People* agt. *Gay*, 10 *Wend.*, 509; *The People* agt. *The General Sessions*, 3 *Barb.*, 141; *The People* agt. *Quimbo Appo*, 20 *N. Y.*, 577). The court of oyer and terminer being in session while the proceedings were pending the justice of the supreme court had no power to let the prisoner to bail for the reason that the statute limits his authority in express terms (2 *Revised Statutes*, 728, *secs.* 56 *and* 57; *The People* agt. *Clews*, 14 *Hun*, 90; *The People* agt. *Clews*, 77 *N. Y.*, 39 *and* 40). In this case it was distinctly affirmed in this court and in the court of appeals that if the court having jurisdiction to try the indictment was in session at the time the judge was applied to to let the prisoner to bail he had no power to do so.

It is claimed by the relator that the bench warrant did not, upon its face, charge the relator with having committed an indictable offense, and for that reason he should have been discharged. The statute authorizing the district-attorney and other officers to issue bench warrants for the apprehension of indicted parties makes no requirements as to the form of the warrant, or the matters which shall be stated therein; and the sufficiency of the same must, therefore, be determined by the common-law rule on the subject (2 *Revised Statutes*, *part* 4, *chap.* 2, *tit.* 4, *art.* 2, *sec.* 55, *Laws of* 1847, *chap.* 338). The statute declares that every person who shall be guilty of any criminal contempt, as defined therein, shall be liable to indictment therefor as a misdemeanor, and upon conviction shall be punished in the mode and manner also determined by the statute. A criminal contempt is defined to be a willful disobedience of any process or order lawfully issued by a court of record. This bench warrant recites the fact that the prisoner had been indicted, the court wherein

it was pending, and stated the offense imputed to him. It is not necessary that a bench warrant issued for the apprehension of the indicted party should be as full and complete in its recitals and statements as a warrant issued under the statute to apprehend a party to be brought before a magistrate for a preliminary examination. It is sufficient if the nature of the offense for which he stands indicted is clearly indicated, and the place and the court in which the indictment is pending. Here the fact is stated that the prisoner is indicted, the court wherein it was found, and the nature and character of the offense imputed to him. It indicated that the offense charged upon him was a misdemeanor and not a felony, and he was sufficiently informed to prepare for trial at the place mentioned in the warrant (*Pratt* agt. *Bogardus*, 49 *Barb.*, 90, *and the cases there cited; People* agt. *McLeod*, 1 *Hill*, 378; *Barbour's Criminal Law*, 525). It is also urged by the learned counsel for the relator that the bench warrant was void for the reason that being for a misdemeanor there was not a compliance with sections 301 and 302 of the Code of Criminal Procedure. This indictment was found in 1874, before those sections were enacted, and it is provided in section 962 that all actions and proceedings commenced prior to the enactment must be conducted in the same manner as if the same had not been passed. The provision referred to, as to the form and contents of the bench warrant, has no application to this case (*The People* agt. *Sessions*, 62 *How. Pr. R.*, 415).

By section 300 it is, in terms, provided that a bench warrant for the arrest of any offender indicted may be issued by the district-attorney in the same manner and form now prescribed by law, at any time after such indictment shall be found. Sections 301 and 302 only apply to the form of a bench warrant to be issued by the clerk; and he is authorized to issue a bench warrant, on the application of the district-attorney, in instances where the prisoner has been discharged on bail, or has deposited moneys instead thereof, and had

The People *ex rel.* Sherwin agt. Mead.

failed to appear in pursuance of his recognizance. When the district-attorney issues the bench warrant himself, he is not required to pursue the form provided in section 301; and section 302 seems to be intended to provide for the form of a bench warrant, to be issued by the clerk on the order of the court, when the offense is a misdemeanor only. The point was also made that the court of sessions for Albany county had no jurisdiction to find the indictment; and that it appears from the indictment itself that the prisoner had not committed any offense in the county of Albany; and that if he was liable to indictment for disobeying the process of the court, that the offense was committed in the city and county of New York, and not elsewhere. The prisoner is a citizen of the state, owing obedience to its laws, and he is charged with having violated the same. Having been duly notified to attend, at particular time and place, before the tribunals of the state, then and there to give evidence in a pending proceeding, and having willfully and purposely failed so to do, the offense of non-appearance was consummated and committed, in the eye of the law, in the county of Albany. The injury to the public, resulting from his non-attendance, occurred in that county, and not in the city and county of New York, where the process was served upon him. Personal presence at the place where the crime is perpetrated is not always indispensable to make out an offense against the accused party, and there are many instances where the offender will not be allowed to gainsay that he was not at the place where the crime imputed to him happened. This is one of that class. The court whose process he disobeyed was a court in and for the county of Albany, and the offense charged upon the prisoner consists in not being in the presence of the court, ready to testify when called for that purpose. For aught that does appear, he was within the county of Albany on the day that he was required to be in court and answer to his name; and if such was the fact, the district-attorney may prove it upon the trial, with a view of establishing the willful

disobedience to the process of the court. The case is similar
to the one where a person sends threatening letters from one
county to another through the mail. The offense, in such a
case, is regarded as consummated at the place and time where
they were received by the person to whom they are addressed,
and the sender may be indicted and tried in such county.
The act of sending produced the injury in the county where
it was received, by disturbing and harassing the feelings of
the party to whom it was addressed. In the case at bar, the
act of non-attendance was an indignity to the court sitting in
the county of Albany, and impeded and delayed the adminis-
tration of justice at that place; and the law presumes that the
prisoner intended that his behavior should have that effect
and influence (*The People* agt. *Rathbun,* 21 *Wend.,* 509;
*The People* agt. *Adams,* 3 *Denio,* 190). On the hearing, the
relator proposed to show that the officer had other bench war-
rants in his possession of the same character and import as the
one returned, and that the officer had served the same and
claimed the right to detain the prisoner by such authority.
This was overruled and the relator excepted. If that was a
pertinent and proper question for the prisoner to raise upon
the hearing, we are unable to discover how the ruling limitir g
the inquiry to the validity of the warrant presented by the
officer, can lead to a reversal of the order dismissing the
*habeas corpus* proceedings, for the reason that the officer did
present valid and sufficient authority for continuing the
custody and arrest of the prisoner. The offer which was
made to go into an inquiry as to the facts and circumstances
upon which the indictment was founded, was properly rejected.
The officer had jurisdiction to inquire whether there was any
such record of indictment, as claimed by the people, and if
there was none, or the court in which it was found had no
jurisdiction over the subject-matter, then to discharge the
prisoner. But as to the guilt of the prisoner as charged in
the indictment, no inquiry could be made in these proceed-
ings. The prisoner's counsel has sought to test the validity

The People *ex rel.* Sherwin agt. Mead.

of the indictment and the sufficiency of the warrant by applying those rules and tests which are applicable to a case where a party is charged with contempt of court, and the court has instituted proceedings with a view to the punishment of the offender, and has condemned him and pronounced sentence and issues its order of arrest to carry its judgment into effect. These rules have no just application to this case, where the party is proceeded against, upon the complaint of the people, and is in due form indicted by a grand jury attending upon a court having jurisdiction of the offense. The statute has declared in express terms that every person who shall be guilty of a willful disobedience of any process or order lawfully issued or made by a court of record, is guilty of a misdemeanor, and may be punished therefor. The prosecution by indictment may proceed by the usual and customary course of procedure, without inquiry whether the court, whose process has been held in contempt, has taken notice of the disobedience with a view of punishing the offender as provided by statute. Each of the proceedings is entirely independent of the other. They may be prosecuted at the same time, and a conviction under one is no bar to a prosecution under the other. The order dismissing the *habeas corpus* proceedings is affirmed, and the form of the order of affirmance will be settled by Mr. justice BRADY.

DANIELS and BRADY, JJ., concur.